UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY SIEBERT,<br><br>        Plaintiff,<br><br>    v.<br><br>GENE SECURITY NETWORK, INC,<br><br>        Defendant. | Case No. 11-cv-01987-JST<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: ECF No. 28 |

Before the Court is the Motion to Dismiss Plaintiffs' First Amended Complaint filed by Defendant Natera, Inc. ("Natera"), formerly known as Gene Security Network, Inc.[1] ECF No. 28.

**I.   BACKGROUND**

The Court accepts the following allegations as true for the purpose of resolving this Rule 12(b)(6) motion. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).

Plaintiff-relator Gary Siebert brings this *qui tam* action against Defendant Natera for violating the federal False Claims Act, 31 U.S.C. § 3729, *et seq.* ECF No. 22 ("FAC"). Natera is a privately-held, for-profit biotechnology corporation that studies and conducts molecular diagnostic tests for in vitro fertilization. FAC ¶ 15. From 2007 to 2010, Natera applied to receive three research grants from the National Institutes of Health ("NIH") and was awarded a total of $3,494,750. Id. ¶ 19–25. Plaintiff alleges that the NIH grant awards were conditioned on compliance with financial management system requirements, addressed in the NIH Grants Policy Statement and the Uniform Administrative Requirements for Awards and Subawards to

---

[1] The operative First Amended Complaint, ECF No. 22, names "Gene Security Network, Inc." as Defendant. According to Defendant, in January 2012, subsequent to the filing of this action, Gene Security Network, Inc. changed its corporate name to Natera, Inc., and Defendant filed its motion to dismiss under that name.

1   Institutions of Higher Education, Hospitals, Other Nonprofit Organizations, and Commercial
2   Organizations, 45 C.F.R. 74 ("UAR").  Id. ¶ 18, 28.  The NIH Grants Policy Statement and UAR
3   are intended to ensure that the rate and type of expenditures are consistent with the approved
4   project.  Id. ¶ 17.

5         Plaintiff alleges that Natera's affirmative statements in its applications for NIH grants and
6   its consent to program requirements contained in NIH award letters were fraudulent because
7   Natera was not in compliance with the mandatory financial monitoring provisions for
8   organizations receiving NIH grants.  Id. ¶ 28–31.  Plaintiff alleges that at the time of each grant
9   award, Natera was aware of its failure to monitor its finances in accordance with NIH
10  requirements — in particular, its failure to track the time employees spent on specific projects and
11  failing to track expenditures by project.  Id. ¶ 28, 32.

## II. REQUESTS FOR JUDICIAL NOTICE

13        Although a court's review on a motion to dismiss is generally limited to the allegations in
14  the complaint, Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), courts may properly
15  take judicial notice of material attached to the complaint, and of matters in the public record.  Fed.
16  R. Evid. 201(b).  See, e.g., Castillo-Villagra v. INS, 972 F.2d 1017, 1026 (9th Cir. 1992).  In
17  addition, the "incorporation by reference" doctrine allows judicial notice of a document attached
18  by a defendant to a motion to dismiss when a "plaintiff's claim depends on the contents of a
19  document" and "the parties do not dispute the authenticity of the document, even though the
20  plaintiff does not explicitly allege the contents of that document in the complaint."  Knievel v.
21  ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).  Therefore, a court may take judicial notice of matters
22  of public record without converting a motion to dismiss into a motion for summary judgment;
23  however, courts may not take judicial notice of facts subject to reasonable dispute.  Lee, 250 F.3d
24  at 689.  A court "shall take judicial notice if requested by a party and supplied with the necessary
25  information."  Fed. R. Evid. 201(d).

26        Defendant Natera requests judicial notice of three documents: "Requirements for Financial
27  and Business Management Systems for SBIR/STTR Awardees" ("SBIR/STTR Awardee
28  Requirements") and "Financial Questionnaire: Evaluation of Financial Management Systems"

1  ("Questionnaire"), ECF No. 29, and "Excerpt of the SF424 Application Guide for NIH and other
2  PHS Agencies" ("NIH Application Guide"), ECF No. 39-1.  Plaintiff requests judicial notice of
3  excerpts of the "NIH Grants Policy Statement" ("Grants Policy"), ECF No. 37.  Because each
4  submitted document is either incorporated by reference by the First Amended Complaint, or is a
5  matter of public record, the Court GRANTS Defendant and Plaintiff-relators' unopposed requests
6  for judicial notice.

## III. LEGAL STANDARD

On a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with all reasonable inferences to be drawn from those facts, as true.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To be entitled to the presumption of truth, a complaint's allegations "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. den'd, --- U.S. ----, 132 S.Ct. 2101 (2012).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 687.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  In the Ninth Circuit, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible."  Starr, 652 F.3d at 1216 (original emphasis).

In addition, fraud claims are subject to a heightened pleading standard.  "In alleging fraud

3

1   or mistake, a party must state with particularity the circumstances constituting fraud or mistake."
2   Fed. R. Civ. P. 9(b). The allegations must be specific enough to give a defendant notice of the
3   particular misconduct alleged to constitute the fraud such that the defendant may defend against
4   the charge. Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). In general, allegations
5   sounding in fraud must contain "an account of the time, place, and specific content of the false
6   representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG
7   LLP, 476 F.3d 756, 765 (9th Cir. 2007). However, "[m]alice, intent, knowledge, and other
8   conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## IV. ANALYSIS

The False Claims Act ("FCA") allows private citizens who have knowledge of past or present fraud on the United States to sue on the government's behalf to recover civil penalties and damages. 31 U.S.C. §§ 3729–3733. Defendant Natera moves to dismiss Plaintiff's operative First Amended Complaint for violation of the FCA, subsections 31 U.S.C. § 3279(a)(1)(A) and (a)(1)(B), for failure to state a legal claim and failure to plead fraud with particularity. ECF No. 28.

Plaintiff's first cause of action for violation of subsection 3729(a)(1)(A) requires: "(1) a false or fraudulent claim (2) that was material to the decision-making process, (3) which defendant presented, or caused to be presented, to the United States for payment or approval (4) with knowledge that the claim was false or fraudulent." Hooper v. Lockheed Martin Corp., 688 F.3d 1037, 1047 (9th Cir. 2012) (citing United States v. Bourseau, 531 F.3d 1159, 1171 (9th Cir. 2008)). Likewise, Plaintiff's second cause of action for violation of subsection 3729(a)(1)(B) requires a showing that "defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim." Id.

Natera moves to dismiss on the grounds that Plaintiff has failed adequately to plead the falsity, materiality, and scienter requirements necessary to establish a prima facie FCA violation. ECF No. 28 at 7. The Court addresses each requirement in turn.

4

**A.     Falsity**

Natera moves to dismiss because "Plaintiff's failure to plead any false certification or statement in the grant applications that was a condition to payment is fatal to his claims." ECF No. 28 at 7.

For an FCA plaintiff "to succeed on a false certification theory, some falsity must be alleged." U.S. ex rel. Hendow v. University of Phoenix, 461 F.3d 1166, 1171 (9th Cir. 2006). In FCA cases, "[i]t is the false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir. 1996) (original emphasis). Plaintiff here alleges that Natera falsely certified its compliance with financial system requirements during the NIH grant application process in two ways. First, Plaintiff alleges that Natera falsely certified in all three grant applications that it would abide by any terms and conditions included in the grant application for which it was approved. FAC ¶ 26. Second, Plaintiff alleges that Natera re-certified its compliance with the terms and conditions of the grant each time it accepted NIH grants through NIH Notice of Award letters. These alleged false certifications stem from a complex maze of regulations, policy statements, and other documents. A detailed explanation of how they relate is necessary.

**i.     The Grant Applications**

Each of the three grant applications contain the following certification statements:

> 18. By signing this application, I certify (1) to the statements contained in the list of certifications* and (2) That the statements herein are true, complete, and accurate to the best of my knowledge. I also provide the required assurances* and agree to comply with any resulting terms if I accept an award. I am aware that any false, fictitious, or fraudulent statements of claims may subject me to criminal, civil or administrative penalties (U.S. Code Title 18, Section 1001).

Id. ¶ 26. In each grant application, the asterisked portion reads: "The list of certifications and assurances, or an Internet site where you may obtain this list, is contained in the announcement or agency specific instructions." Id., Ex. A p. 2 (signed Dec. 12, 2007); id., Ex. D p. 2 (signed April 7, 2008); id., Ex. H p. 2 (signed Aug. 5, 2009). That list is the NIH Application Guide, which serves as a guide for preparing and submitting applications to NIH. "Excerpt of the SF424

5

1 Application Guide for NIH and other PHS Agencies" ("NIH Application Guide"), ECF No. 39-1

2 (rev. June 18, 2012). Under a section titled "Assurances and Certifications," the NIH Application

3 Guide states that "applicants and grantees must comply with a number of additional public policy

4 requirements. Refer to the <u>NIH Grants Policy Statement</u> for additional information." <u>Id</u>. p. III-16

5 (original emphasis).

6 The NIH Grants Policy Statement requires applicants to affirm their compliance with

7 various "Financial Management System Standards":

> Grantees are required to meet the standards and requirements for financial management systems set forth or referenced in 45 C.F.R. 74.21 or 92.20, as applicable. The standards and requirements for a financial management system are essential to the grant relationship. NIH cannot support the research unless it has assurance that its funds will be used appropriately, adequate documentation of transactions will be maintained, and assets will be safeguarded. . . . A grantee's failure to establish adequate control systems constitutes a material violation of the terms of the award. Under these circumstances, NIH may include special conditions on awards or take any of the range of actions specified in "Administrative Requirements — Enforcement Actions," as necessary and appropriate.

15 ECF No. 37 ("Grants Policy"), Ex. 3 p. 10. The Department of Health and Human Services

16 ("HHS") promulgated regulations establishing the administrative requirements for awards to

17 commercial organizations, which are known as the "Uniform Administrative Requirements for

18 Awards and Subawards to Institutions of Higher Education, Hospitals, Other Nonprofit

19 Organizations, and Commercial Organizations" ("UAR"), codified at 45 C.F.R. 74, *et seq*. The

20 NIH Grants Policy Statement incorporates the UAR.

21 Part 74.21 provides the post-award requirements for commercial organizations, specifying

22 the standards for financial management systems. In particular, subsection (b) requires that the

23 recipient's financial management systems include "records that identify adequately the source and

24 application of funds for HHS-sponsored activities," "effective control over and accountability for

25 all funds," "comparison of outlays with budget amounts for each award," and "written procedures

26 for determining the reasonableness, allocability, and allowability of costs in accordance with . . .

27 the terms and conditions of the award." 45 C.F.R. § 74.21(b). By signing and presenting the

28 application to the NIH, Plaintiff alleges Natera falsely certified compliance with the NIH Grants

6

1    Policy and the UAR.

2          **ii.**    **Award Letter Requirements**

3    Plaintiff also alleges that Natera violated the FCA each time it accepted NIH funds by

4    reaffirming its compliance with the terms and conditions of the grant contained in Notice of

5    Award letters. Each Notice of Award letter states:

> "REQUIREMENT: This award is subject to the requirements pertaining to the awardee's financial and business management systems, as set forth in the documents entitled, 'SBIR/STTR Financial/Management Systems Requirements?, available at [url omitted] and which is hereby incorporated by reference."

Id. ¶ 27; id. Ex. B, p. 4. The document refers to the publicly available "Requirements for Financial and Business Management Systems for SBIR/STTR Awardees" ("System Requirements"), located on the NIH website. ECF 29-1, Ex. A. That document states: "the awardee must have records that document and reflect compliance with the following," and lists various financial and business management system requirements, including the requirement that awardees track employee time spent on specific projects and expenditures by project. Id. p. 2.

The System Requirements document also directs awardees to the "Financial Questionnaire: Evaluation of Financial Management Systems." FAC, Ex. J. The Questionnaire "is a tool designed to assist both grantee and NIH staff in assessing the grantee's management capabilities." ECF No. 29-2, Ex. B p. 1. Section A of the questionnaire evaluates the "Accounting System" of the applicant and contains the following description:

> The grantee organization needs to incorporate an accounting system that will track costs between direct and indirect costs (general ledger) as well as direct costs by project (project ledger). The grantee will also need to establish a time and effort reporting system to track personnel costs by project. It is industry practice to require daily reporting of effort expended on individual projects or activities. This should be reported on an hourly basis, or in increments of an hour.

Id. at 2. Plaintiff alleges that Natera violated the FCA when it filled out the questionnaire, certifying that it tracked employee time spent on specific projects and expenditures by project even though it had no system in place to do so. FAC ¶ 28.

Natera argues that Plaintiff inadequately alleges that it made any false statements. In

particular, Natera argues that Plaintiff has not alleged what statements were false and how they were false. The Court disagrees. The First Amended Complaint: traces the above-cited authorities and program requirements; attaches the subject grant applications, each of which includes signed "Section 18" statements certifying compliance with the UAR and the financial management systems requirements; and alleges that the signed certifications were false because Natera, at the time the certifications were made, did not track hourly employee time by project and expenditures by project. FAC ¶ 28. In addition, Plaintiff alleges that "each application for an NIH grant requires that the applicant affirm its compliance with various financial management system requirements" and that "[i]n response to the [Financial Questionnaire], GSN expressly affirmed the existence of" financial systems it did not have in place — namely, the time and expenditure tracking system required by the NIH. Those allegations are sufficient to satisfy the falsity requirement.

Confusingly, Natera also argues that the Notice of Award letters, which contain terms and conditions that lead to the Financial Questionnaire, cannot serve as false certifications "because they are statements *by the government*, and not by Natera." ECF No. 28 p. 7 (original emphasis). That misconstrues Plaintiff's allegations; Plaintiff alleges that it was Natera's certification of compliance, made in response to the Questionnaire, which constitutes a false certification.

### B. Materiality

Natera also moves to dismiss on the grounds that the post-award certifications cannot satisfy the materiality requirement because the False Claims Act only applies to false statements made pre-award — that is, prior to the Government's decision to pay the claim. The certifications at issue here either came after the NIH Notice of Award letters or govern post-award program requirements. Per Natera, false certifications concerning post-award requirements, or made after the award letter is mailed, do not constitute a claim for payment material to the Government's decision-making process.

In order to plead an actionable violation of the False Claims Act, the false certification of compliance must be material to the government's payment of funds. Hendow, 461 F.3d at 1172. Plaintiff alleges that NIH award payments are conditioned on compliance with the Financial

8

Systems Requirements in the NIH Grants Policy Statement and the UAR. Natera argues that all the alleged certifications were merely conditions for continued post-award participation rather than conditions of pre-award payment.

In Hendow, the *qui tam* plaintiffs alleged that the University of Phoenix knowingly made false promises to comply with an incentive compensation ban to become eligible to receive Title IV funds. The court examined the controlling statutes, regulations, and agreement, and found that they were "not ambiguous exhortations of an amorphous duty," but explicitly conditioned "participation and payment on compliance with, among other things, precise requirements that relators allege that the University knowingly disregarded." Id. at 1176. The University of Phoenix pressed the difference between certifications that an institution *will* comply with requirements and certifications that it *has* complied with requirements. Id. (emphasis added). The Hendow court found that "[t]his grammatical haggling is unmoored in the law." Id. If "conditions of participation were not conditions of payment, there would be no conditions of payment at all — and thus, an education institution could flout the law at will." Id. The court held that "[t]hese conditions are also 'prerequisites,' and 'the sine qua non' of federal funding, for one basic reason: if the University had not agreed to comply with them, it would not have gotten paid." Id.

Hendow is instructive. Here, the UAR concerns "Post-Award Performance," but Plaintiff alleges that the NIH would not have awarded Natera the grants had Natera refused to certify that it would comply with the provisions of the UAR (prior to the grant), or that it was already in compliance (at the Notice of Award letter stage). Though Natera is free to dispute the merit of those allegations, Plaintiff adequately raises the issue for purposes of a motion to dismiss.

Natera does argue that Plaintiff fails to identify express language conditioning payment on compliance to requirements. That argument is refuted by the text in both the Grants Policy and the Questionnaire. In the Grants Policy, under a section titled "Completing The Pre-Award Process," subsection "Eligibility," the text states that the "NIH may consider other factors relating to the applicant's ability to responsibly handle and account for Federal funds and to carry out the project." ECF No. 37 Ex. 2 p. 2. Under the subsection "Cost Analysis and Assessment of

9

1   Management Systems," the Grants Policy provides that the Grants Management Officer

2   "determines the adequacy of the applicant's financial and business management systems that will

3   support the expenditure of and accountability of NIH funds." Id. "On the basis of the review

4   results, the [Grants Management Officer] will determine the need for any corrective action and

5   may impose special conditions on the award." Id.

6         The Questionnaire states: "Demonstration of a grantee's management capabilities is one of

7   the evaluative criteria used in the administrative review process prior to issuance of the award."

8   ECF 22 Ex. J. In the same paragraph, the text states: "Concerns related to a grantee

9   organization's management capabilities may result in the determination to withhold an award or

10  issuance of an award with special terms and conditions in accordance with 45 CFR 74.14." Id.

11  An asterisked portion explaining the purpose of the Questionnaire states: "For use primarily with

12  new for-profit grantees (including SBIR/STTR organizations) to determine major weaknesses in

13  financial management systems. Responses may require that an in-depth review be performed."

14  Id.

15        Finally, the Notice of Award letters make clear that, even after NIH decides to award a

16  grant, it is subject to further certifications of compliance. Each letter states: "Acceptance of this

17  award including the 'Terms and Conditions' is acknowledged by the grantee when funds are

18  drawn down or otherwise obtained from the grant payment system." See, e.g., FAC, Ex. B p. 1.

19  Further, the award letters provide: "Prior to drawing down funds for this award from the Payment

20  Management System, the awardee is required to have in place written policies and procedures for

21  financial and business management systems that comply with the standards set forth in" the

22  Systems Requirements document. Id. p. 4. The Notice of Award letters are therefore offers of

23  funding, acceptance of which constitutes further certifications of compliance with and consent to

24  the terms and conditions contained and incorporated therein.

25        While Natera correctly points out that "[m]ere regulatory violations do not give rise to a

26  viable FCA action," violations that may be conditions for payment do meet the FCA standard.

27  See Hopper, 91 F.3d at 1267; Hendow, 461 F.3d at 1172. Plaintiff adequately alleges that the

28  false certifications at issue here were material to the NIH's decision to award (and fund) Natera's

grants.

### C. Scienter

Natera also moves to dismiss on the grounds that Plaintiff has failed adequately to plead scienter, subject to the heightened fraud pleading standard.

The False Claims Act defines "knowing" to include a defendant who, with respect to false information, "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). However, the FCA itself provides that "no proof of specific intent to defraud" is required to satisfy the scienter requirement. 31 U.S.C. § 3729(b)(1)(B). See, e.g., Castillo-Villagra v. INS, 972 F.2d 1017, 1026 (9th Cir. 1992). In short, "[s]o long as the statement in question is knowingly false when made, it matters not whether it is a certification, assertion, statement, or secret handshake; False Claims liability can attach." Hendow, 461 F.3d at 1172.

Plaintiff alleges that Natera knew its certifications of compliance were "known to be false by [Natera] and the persons making them." FAC ¶ 29. At the time the certifications were made, Plaintiffs allege that Natera was "not in compliance with the mandatory financial monitoring provisions for organizations receiving NIH grants." Id. ¶ 31. By alleging that Natera certified its compliance with requirements it was, at the time, failing to meet, is sufficient to allege scienter under the FCA. Plaintiff is not required to allege anything more in order to survive a motion to dismiss; the First Amended Complaint, as filed, sufficiently puts Natera on notice of the nature of the claims against it.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint is hereby DENIED.

**IT IS SO ORDERED**.

Dated: June 17, 2013



_____
JON S. TIGAR
United States District Judge