UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY SIEBERT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GENE SECURITY NETWORK, INC,<br><br>　　　　Defendant. | Case No.  11-cv-01987-JST<br><br>**ORDER REGARDING JURY INSTRUCTIONS** |

The Court will give the following preliminary jury instructions tomorrow.

First, the Court will read the parties' proposed instructions, ECF No. 145, beginning at Ninth Circuit Model Instruction 1.1B through and including Ninth Circuit Model Instruction 2.3, except as follows.

The Court will not give Ninth Circuit Model Instruction 1.13, because the instruction is not wholly accurate. While there is no "transcript" *per se* of the proceedings, the court reporter is taking down the proceedings stenographically, and the jurors will be able to request readback. To address this problem, the Court will give California Judicial Council Advisory Committee on Civil Jury Instructions ("CACI") Instruction 102 rather than preliminary instruction 1.14. CACI 102 reads as follows:

**102. Taking Notes During the Trial**

You have been given notebooks and may take notes during the trial.  Do not take the notebooks out of the courtroom or jury room at any time during the trial.  You may take your notes into the jury room during deliberations.

You should use your notes only to remind yourself of what happened during the trial.  Do not let your note-taking interfere with your ability to listen carefully to all the testimony and to watch the witnesses as they testify.  Nor should you allow your impression of a witness or other evidence to be influenced by whether or not other jurors are taking notes.  Your independent

recollection of the evidence should govern your verdict, and you should not allow yourself to be influenced by the notes of other jurors if those notes differ from what you remember.

The court reporter is making a record of everything that is said. If during deliberations you have a question about what the witness said, you should ask that the court reporter's records be read to you. You must accept the court reporter's record as accurate.

At the end of the trial, your notes will be collected and destroyed.

* * * *

The Court will also read the following substantive instructions:

**Special Instruction Number One**

Plaintiff Gary Siebert claims that GSN violated the False Claims Act. The False Claims Act makes liable anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement" that is material to a "false claim for payment or approval" by the United States government.

To prove his claim under the False Claims Act, Gary Siebert must prove:

(1) that GSN made a false statement to the federal government;

(2) that when GSN made the the statement it knew it was false, or acted in reckless disregard of whether it was true;

(3) that the statement was material to the government's decision to pay out on GSN's grant request; and

(4) that the statement caused the government to pay out money or forfeit moneys that were due.

A False Claims Act claim can be based on the allegation that a party has falsely certified compliance with a statute or regulation as a condition to government payment.

**Special Instruction No. 2**

The following facts are undisputed in this case and you are to take them as having been proven:

1. GSN applied for and received the following NIH research grants:

   a. GSN applied for the Novel Informatics Grant on December 12, 2007. The NIH awarded the following sums to GSN in connection with that grant: $195,749.00 on April 11, 2007; $835,485.00 on September 10, 2008, and; $658,668.00 on May 29, 2009.

    b.    GSN applied for the Array Informatics Grant on April 7, 2008.  The NIH awarded the following sums to GSN in connection with that grant: $200,068.00 on February 12, 2009; $800,710.00 on September 28, 2009, and; $799,036.00 on August 19, 2010.

    c.    GSN applied for the Non-Invasive Aneuploidy Grant on August 5, 2009.  The NIH awarded the following sums to GSN in connection with that grant: $200,833.00 on August 12, 2010; $800,745.00 on May 26, 2011, and; $802,079.00 on May 15, 2012.

2.    If Gary Siebert proves that false statements were made to the NIH on or after September 1, 2010 in connection with the three NIH research grants which are the subject of this case, then you must find that those false statements were made with knowledge of their falsity or reckless disregard for their truth.

3.    If Gary Siebert proves that GSN made a false statement to the NIH in connection with the three NIH research grants I have just listed, you must find that the statement was material, with one exception.  You will hear evidence regarding a document called the Office of Extramural Research Financial Questionnaire.  If Gary Siebert proves that GSN made a false statement or statements in that document, he must also prove that the statement or statements were material.

## Special Instruction No. 3

GSN claims that Gary Siebert fraudulently induced GSN to enter into a severance agreement with Gary Siebert.  To establish this claim, GSN must prove:

(1)    that Gary Siebert misrepresented a fact during the parties' negotiations over his severance agreement;

(2)    that the fact was material;

(3)    that Gary Siebert knew the fact was false or he acted in reckless disregard of whether it was true;

(4)    that Gary Siebert intended GSN to rely on his representation;

(5)    that GSN did rely on the representation;

(6)    that GSN was harmed; and

(7)    that GSN's reliance on Gary Siebert's representation was a substantial factor in causing GSN's harm.

/ / /

/ / /

/ / /

/ / /


1   The Court notes that GSN's counter-claim for fraudulent inducement is the only one for
2   which it has provided a proposed instruction.
3   **IT IS SO ORDERED.**
4   Dated: January 20, 2015

_____
JON S. TIGAR
United States District Judge