UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY SIEBERT,<br><br>        Plaintiff,<br><br>    v.<br><br>GENE SECURITY NETWORK, INC,<br><br>        Defendant. | Case No.  11-cv-01987-JST<br><br>**ORDER DENYING MOTION FOR NEW TRIAL**<br><br>Re: ECF No. 244 |

Now before the Court is Plaintiff Gary Siebert's Motion for a New Trial. ECF No. 244. For the reasons set forth below, the Court will deny the motion.

## I. BACKGROUND

On April 22, 2011, Plaintiff Siebert filed this action, alleging that Defendant Gene Security Network, Inc. ("GSN") violated the federal False Claims Act, 31 U.S.C. § 3729, by making false statements to the federal government in order to receive research grants from the National Institutes of Health ("NIH"). See ECF No. 1. Those statements related to whether GSN was in compliance with the accounting requirements for recipients of NIH grant funds set forth in 45 C.F.R. § 74.21.[1] Id. ¶¶ 16-24. On December 2, 2014, the Court granted in part and denied in part cross-motions for summary judgment. ECF No. 125. In that order, the Court identified several questions to be decided by a jury, including whether GSN's multiple statement to the NIH in connection with its applications for grant funds were false. Id.

Trial began on January 20, 2015. ECF No. 184. The jury heard five days of testimony from seven witnesses, and began deliberations on January 29, 2015. ECF Nos. 192, 193, 199, 205, 214, 219. After four days of deliberation, the jury returned a verdict for GSN, concluding

---

[1] Section 74.21 was amended effective December 25, 2014. In this order, the Court references the earlier version of the regulation, which applies to this case.

1  that Siebert had failed to prove that GSN made any false statements in connection with its
2  applications to the NIH.  ECF No. 229.
3     On March 3, 2015, Siebert filed this motion for a new trial, contending that the jury's
4  determination that GSN made no false statements to the NIH was against the clear weight of the
5  evidence and that Siebert was entitled to a new trial on that basis.  ECF No. 244; Fed. R. Civ. P.
6  59(a).

## II. LEGAL STANDARD

   Subsection (a) of Federal Rule of Civil Procedure 59 provides, in relevant part, that a "court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial . . . ." Under Rule 59(a), the court has discretion to grant a new trial if, in its view, the verdict was against the clear weight of the evidence, or the court must do so to prevent a miscarriage of justice. Molski v. M.J. Cable Co., 481 F.3d 724, 729 (9th Cir. 2007) (citations omitted).  A verdict is "against the clear weight of the evidence" if, after giving full respect to a jury's findings, the court "is left with the definite and firm conviction" that the jury rendered an erroneous verdict.  Landes Constr. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (citations omitted).

   The standard for granting a new trial based on the weight of the evidence is "stringent." E.E.O.C. v. Pape Lift, Inc., 115 F.3d 676, 680 (9th Cir. 1997).  "A motion will be granted on this ground only if the verdict is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result."  Id. (citations and internal quotations omitted). Where both sides have presented "significant," though contradictory evidence, a district court should hesitate to substitute its own judgment for that of the jury.  See, e.g., Roy v. Volkswagen of Am., Inc., 896 F.2d 1174, 1177-79 (9th Cir. 1990) (reversing the district court's grant of a new trial where both sides presented persuasive evidence).

   In reviewing the basis for a new trial motion, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party."  Landes, 833 F.2d at 1371 (citations omitted).  In doing so, however, the judge must maintain "a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system," which "certainly suggests that in most cases the judge

1  should accept the findings of the jury, regardless of his own doubts in the matter," id., even if the
2  judge would have reached a different verdict, Roy, 896 F.2d at 1176.[2]
3      A district court errs in denying a motion for a new trial where "the absolute absence of
4  evidence to support the jury's verdict makes refusal to grant a new trial an error in law." Molski,
5  481 F.3d at 729 (citations and internal alterations omitted).

## III. ANALYSIS

Because the jury's verdict in this case rested on a single finding – that GSN made no false statements[3] – the Court's task is to assess whether that finding was against the clear weight of the evidence presented at trial.

Siebert's theory at trial was that GSN falsely stated that it had complied with the accounting requirements set forth in 45 C.F.R. § 74.21.[4] That section provides, in relevant part:

> (b) Recipients' financial management systems shall provide for the

---

[2] Siebert's's motion rests in part on the erroneous premise that his burden here is the "preponderance of the evidence," as it was at trial, rather than the "clear weight of the evidence." ECF No. 244 at 1; ECF No. 253 at 14 ("To prevail in this motion, . . . Siebert must only show his evidence tips the metaphorical scale by the slightest degree, i.e., a preponderance of the evidence, by 51%."); see also ECF No. 253 at 1 (arguing that "this motion for a new trial will be adjudicated by the Court's *de novo* analysis of the weight of the trial evidence"). The correct standard is stated above. A trial court that uses the preponderance of the evidence standard to adjudicate a motion for new trial is subject to reversal. Landes, 833 F.2d at 1372.

[3] Siebert contends that he identified seventeen allegedly false statements at trial. ECF No. 244 at 3. With one exception, each of these statements amounts to an assertion by Defendant that it complied with the accounting requirements set forth in 45 C.F.R. § 74.21. The Court therefore discusses the statements collectively. The one exception – Robin McElroy's statement on a document entitled "Financial Questionnaire" – is the subject of a separate discussion infra.

[4] In his opening brief, Siebert argues briefly that the Court erred in submitting the language of 45 C.F.R. § 74.21, the relevant accounting regulation, as part of a jury instruction. See ECF No. 244 at 6 (citing 45 C.F.R. § 74.21). Siebert's reply brief omits the argument, and he may have abandoned it. See ECF No. 253. In any event, the Court continues to believe that the text of 45 C.F.R. § 74.21 is both the best statement of the relevant law, and sufficiently clear and unambiguous that a lay jury could apply it.

It is also worth noting that Siebert actually proposed the language in question. See ECF No. 145 at 41-42 (proposed jury instructions). Thus, even if it was error, the error was invited and is not now a proper basis for new trial. See United States v. Baldwin, 987 F.2d 1432, 1437 (9th Cir. 1993); Larson v. Meimi, 9 F.3d 1397, 1401 (9th Cir. 1993).

>following:
>
>(1) Accurate, current and complete disclosure of the financial results of each HHS-sponsored project or program in accordance with the reporting requirements set forth in 74.52. . . .
>
>(2) Records that identify adequately the source and application of funds for HHS-sponsored activities. . . .
>
>(3) Effective control over and accountability for all funds, property and other assets. . . .
>
>(4) Comparison of outlays with budget amounts for each award. . . .
>
>(5) Written procedures to minimize the time elapsing between the transfer of funds to the recipient . . . .
>
>(6) Written procedures for determining the reasonableness, allocability and allowability of costs . . . .
>
>(7) Accounting records, including cost accounting records, that are supported by source documentation.

45 C.F.R. § 74.21(b). Siebert asserted that GSN was not in compliance with subsections (2), (3), (4), and (7) because GSN did not maintain "project-based accounting," did not use "time and effort" records to track employment-related costs, and commingled grant funds with other funds.[5]

As to the first claim, GSN provided significant evidence that it allocated expenditures to individual grants, i.e., that it had project-based accounting. For example, both Rabinowitz, who is GSN's CEO, and John Croswell, who is GSN's former operations manager, testified that GSN carefully allocated fund expenditures to particular grants. They identified various tools that GSN used for this purpose, including Quickbooks software, weekly board meeting reports, and a "budget-to-actual tracking tool." See Rabinowitz 432:15-434:2, 479:14-18, 481:25-483:23, 486:21-493:14, 495:4-499:1, 556:4-18, 560:10-22; Croswell 613:4-614:25, 616:8-22, 620:2-17, 632:18-633:4, 684:4-8, 687:9-688:19, 740:11-21, 741:24-742:14, 803:3-9, 820:22-821:16. Venkata Peddada-West, GSN's former office manager, accountant, and human resources manager, also testified that, for a 2009 audit, GSN pulled accounting information from "several different

---

[5] Because Siebert states that its argument that Defendant improperly "commingled" funds is now moot, ECF No. 244 at 5, the Court does not address that argument.

sources," including the budget-to-actual tracking tool, though that "wasn't the only one." West 849:13-850:24.  Further, even Siebert testified that GSN's employees took specific steps to compare budgeted to actual expenses.  Siebert 270:16-271:19.  Andrew Newman, an accountant who audited GSN for its compliance with 45 C.F.R. § 74.21, and whose testimony was offered by Plaintiff, corroborated this testimony:

> Q: And in fact, you determined, based on your inquiry of staff and management, that the scientists at GSN in fact closely tracked the company's use of grant funds from the NIH, is that correct?
>
> A: That is correct.
>
> Q: And you also found that those scientists didn't use grant funds unless it was necessary for the advancement of their grant projects?
>
> A: I did.  I found a lot of evidence to support the fact that the scientists in fact scrutinized expenses [that] were charged to the grants.

Newman 977:-2-12.  This testimony, combined with the documentary evidence GSN provided at trial, including its budget-to-actual tracking tool, Tr. Ex. 278, and its board-meeting materials, Tr. Ex. 233, tended to show that GSN was keeping track of grant funds on a grant-by-grant basis.  The undisputed fact that GSN never misspent grant funds – i.e., never spent federal money on something other than the grant purpose for which it was awarded – is further circumstantial evidence tending to show that GSN adequately accounted for funds on a per-project basis.

Siebert points to contrary testimony by Newman and asks the Court to disbelieve much of Rabinowitz and Croswell's testimony.  See, e.g., Newman 957:21-958:5, 958:11-19 (reading audit report); ECF No. 244 at 11, 15-16.  Siebert's criticisms of Rabinowitz and Croswell do not meet his high burden on a motion for new trial.  "Where credibility is central to a jury's determination, '[d]oubts about the correctness of the verdict are not sufficient grounds for a new trial: the trial court must have a firm conviction that the jury has made a mistake.'"  Carrethers v. Bay Area Rapid Transit, No. C-09-1101 EMC, 2012 WL 1004847, at *5 (N.D. Cal. Mar. 26, 2012) (citing Landes, 833 F.2d at 1372); see also Tennant v. Peoria & Pekin Union Ry., 321 U.S. 29, 35 (1944)

5

("Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."). Siebert has not shown that the jury's finding that GSN made no false statement regarding its project-based accounting is against the clear weight of the evidence, and the Court does not have a "firm conviction" that the jury made a mistake.

GSN also submitted significant evidence tending to show that, while it did not use a particular suggested form of time card to record its payroll costs,[6] it adequately tracked its employees' time and effort. Rabinowitz 340:12-343:20, 419:8-422:16, 557:4-559:11, 563:1-18; Croswell 644:14-19; West 883:7-885:21; McElroy 571:15-20. West specifically testified that hourly employees tracked their time through time cards, that full-time and part-time employees accounted for their time by getting approval by lab managers, and that full-time employees also accounted for their time by documenting their paid time off. West 883:7-885:21. And GSN's witnesses explained that GSN employed an independent accounting firm, Frank Rimerman & Co., to provide regular accounting services, including, on a monthly basis, helping GSN close its books and process payroll. See, e.g., Croswell 805:23-808:11, 808:21-25. Rimerman never advised GSN that its payroll practices were inadequate to track employee costs. Croswell 808:18-809:20.

Siebert points to contrary evidence, see, e.g., Newman 959:3-6, 959:12-25, but the mere existence of conflicting evidence is not enough to set aside a jury's verdict. See Roy, 896 F.2d at 1177-79. Having heard and considered all of the evidence at trial, the Court is not left with the "definite and firm conviction" that the jury's implicit finding that GSN adequately tracked its employees' time and effort was erroneous.

Given the significant evidence from which the jury could determine that GSN complied with 45 C.F.R. § 74.21, the Court finds that Siebert is not entitled to a new trial on the issue of whether GSN's statements of regulatory compliance were false.

At trial, Siebert also attacked a statement made by GSN Office Manager Robin McElroy on an NIH Questionnaire. Tr. Ex. 122. The relevant language on the questionnaire asked: "How

---

[6] Both Newman and Siebert conceded at trial that the plain language of 45 C.F.R. § 74.21 says nothing about a "timesheet" requirement. Siebert 276:15-23; Newman 980:18-23.

do employees account for their time and effort?" In response, McElroy wrote: "Timesheets Semi-Monthly." The evidence at trial established that McElroy's response was true – that as part of its accounting system, and in connection with its payroll processing, GSN used semi-monthly timesheets to track employee time, including time spent on grant projects. Because the statement was literally true, the jury's conclusion that it was not false is not against the weight of the evidence.

## CONCLUSION

Siebert's motion for a new trial is denied. The Court will enter judgment in favor of Defendant GSN. GSN shall submit a proposed form of judgment within ten court days.

IT IS SO ORDERED.

Dated: April 22, 2015

_____
JON S. TIGAR
United States District Judge